# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:18-cv-1954

NICK MOLINA, an individual,

        Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware corporation,

        Defendant.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Nick Molina ("**Plaintiff**"), submits the following Motion for Partial Summary Judgment against Defendant Ford Motor Company ("**Ford**"). As grounds therefor, Plaintiff states as follows.

**I.    INTRODUCTION**

This is an action to enforce an express warranty under the Colorado Uniform Commercial Code, Colo. Rev. Stat. § 4-1-101 *et seq.* (the "**UCC**") and subject to the minimum standards of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* Plaintiff, an Army veteran who was deployed overseas, purchased a 2017 Ford F-150 (the "**Vehicle**"), and immediately experienced multiple electrical problems affecting Vehicle safety. While the Vehicle was in the shop for over one hundred days, Plaintiff sought a repurchase from Ford under the Vehicle's written warranty. Ford declined because the "vehicle does not appear to meet the requirements for a repurchase/replacement under the New York or Colorado state buyback criteria." (Ex. 1 – Buyback Denial).

This lawsuit followed. Ford contends that it has no obligation to repurchase the

Vehicle because the warranty is a limited warranty, and Ford can continue attempting to repair the Vehicle for the remainder of the warranty term.  Ford's failure to repair the Vehicle, and do so within a reasonable time, has caused the limited remedy to fail of its essential purpose.  Plaintiff is, therefore, entitled to elect his remedies and a refund of the purchase price.

## II.  LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. See White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986); Kaiser-Francis Oil Co. v. Producer's Gas Co., 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. See Anderson, 477 U.S. at 248.

When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. See Garrett v. Hewlett Packard Co., 305 F.3d 1210, 1213 (10th Cir. 2002).  If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  See Fed. R. Civ. P. 56(c)(1)(A).

Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  See Bacchus Indus. Inc. v. Arvin Indus. Inc., 939 F.2d 887, 891

(10th Cir. 1991); Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**III. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON CLAIM 3: BREACH OF EXPRESS WARRANTY**

<u>Burden of Proof and Elements</u>

"The Magnuson–Moss Warranty Act creates federal standards for warranties provided to buyers of consumer goods." Sea-Alis, LLC v. Volvo of the Americas, 09-CV-01883-PAB-KLM, 2011 WL 3665396, at *1 (D. Colo. Aug. 22, 2011). Although the statute creates a cause of action for a warranty failing to comply with the minimum standards, a cause of action for breach of warranty is governed by state law. See Bush v. Am. Motors Sales Corp., 575 F. Supp. 1581, 1582 (D. Colo. 1984). Thus, to succeed on a claim for breach of warranty, a plaintiff must successfully prove a breach of an express warranty under state law. Birdsong v. Apple, Inc., 590 F.3d 955, 958 fn. 2 (9th Cir. 2009). "To recover for breach of express warranty, a plaintiff must prove that: 1) a warranty existed; 2) the defendant breached the warranty; 3) the breach proximately caused the losses claimed as damages; and 4) timely notice of the breach was given to defendant." Fiberglass Component Prod.,

Inc. v. Reichhold Chemicals, Inc., 983 F. Supp. 948, 953 (D. Colo. 1997). Plaintiff must prove these elements by a preponderance of the evidence. Palmer v. A.H. Robins Co., Inc., 684 P.2d 187, 207 (Colo. 1984).

### A. Ford Expressly Warranted That It Would Remedy Defective Parts.

Ford expressly warranted that Ford would remedy all malfunctioning or failing parts of the Vehicle during the first three years or thirty-six thousand miles of normal Vehicle operation. An express warranty is "'[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.'" Palmer v. A.H. Robins Co., Inc., 684 P.2d 187, 207–08 (Colo. 1984) (quoting Colo. Rev. Stat. § 4-2-313(1). Thus, Ford made an express warranty if it affirmed or promised to cause the Vehicle to conform to the affirmation or promises.

Here, Ford expressly promised to take remedial actions with respect to defective, malfunctioning, or failing parts of the Vehicle. Specifically, Ford promised: "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship." (the "**Warranty**") (Ex. 2 - Warranty at 13. The Warranty further states that: "Ford provides the New Vehicle Limited Warranty only to remedy manufacturing defects that result in vehicle part malfunction or failure during the warranty period." ( Id.) "The written warranties included with new Ford vehicles are commonly held to be express warranties. e.g. In re MyFord Touch Consumer Litigation, 291 F. Supp. 3d 936, 954-56 (N.D. Cal. 2018). Accordingly, Ford has made an express warranty.

### B. Ford Breached The Express Warranty To Correct Defective And Failed Parts.

Ford did not timely correct manufacturing defects in factory-supplied materials or factory workmanship and breached the Warranty. Under a limited warranty to repair or replace, a warranty is breached if the warrantor fails to repair or replace under the warranty. See e.g. Hersh Companies Inc. v. Highline Village Assoc.'s, 30 P.3d 221 (Colo. 2001). The repair must actually fix the problem: "an unsuccessful effort to remedy defects found to exist renders the seller-warrantor liable; the buyer is not bound to allow him a second opportunity or permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." Kure v. Chevrolet Motor Div., 581 P.2d 603, 608 (Wyo. 1978). "[A]t some point in time after the purchase of a new automobile, it must be put in good running condition and the seller does not have an unlimited time for performance of its warranty obligation." Id. Therefore, a warranty is breached not only if the warrantor fails to perform the limited remedy, but also if the warrantor fails to perform its obligations timely.

Here, the Vehicle was defective and Ford did not timely correct the defects. Plaintiff purchased the Vehicle on June 30, 2017. On January 8, 2018, Plaintiff's son took the Vehicle to Phil Long Ford Chapel Hills to address electrical problems. (Ex. 3 – Phil Long Invoice 1). These electrical issues included: errors in the blind spot and cross traffic detection system[1]; running boards failing to deploy; center console lights flickering; loss of driver accessory controls; loss of radio and heater function; and loss of window use. (Ex. 3 at 1). The repair technician was able to confirm the problems occurred, and attempted to repair the defects. (Ex. 3 at 2-3). The technician noted that the vehicle computer "might not have been

---

[1] The Blind Sport Information System is a safety feature designed to detect obstructions next two and behind the Vehicle. https://ford.to/2xptbUe

programmed correctly" and the "lane departure system was not calibrated[2]". (Ex. 3 at 2). After the technician's efforts, the Vehicle was not ready for pickup until March 2, 2018. (Ex. 3 at 2). All told, these attempted repairs took fifty-three days. (Ex. 3 at 2).[3]

Not five days later, the Vehicle was back at Phil Long of Chapel Hills. This time, Plaintiff complained of the same problems. (Ex. 4 – Phil Long Invoice 2 at 1). The technician again attempted to fix the problems, and the Vehicle was not ready until April 30, 2018. (Ex. 4 at 1). The repair attempt took another fifty-four days. (Id.). Despite being out of service for 107 days, the Vehicle still experienced electrical problems shortly after Plaintiff picked up the Vehicle from Phil Long a second time. (Dep. of Nick Molina at 74:16-76:24) On April 30, 2018, Plaintiff had owned the Vehicle for nine months, and the Vehicle had been in for repairs for more than three months. Plaintiff eventually parked the Vehicle, and the Vehicle still has less than two thousand miles on the odometer.

### C.     Ford's Breach Of The Express Warranty Caused Plaintiff Damages.

There can be no doubt that Ford's failure to repair the Vehicle in conformity with the Warranty has caused Plaintiff's damages. After owning the Vehicle for nine months, the Vehicle had been in the shop for repairs for three months. After more than a hundred days in the shop, the Vehicle still does not perform as warranted. (Molina Dep. 74:16-76:24). There is no evidence that the defective parts are not covered by the warranty, and there is no evidence that the cause of the defects is anything other than Ford. Despite paying for the Vehicle, the Vehicle has never been in its warranted condition. The precise amount of Plaintiff's damages is an issue for trial. Accordingly, Ford's breach of the Warranty has

---

[2] The lane departure system is a safety feature designed to alert the driver of an unintended lane departure. https://ford.to/302Syrc

[3] The Repair Order indicates it was opened on January 8, 2018, and the Vehicle was "Ready" on March 2, 2018. Ex. 2.

00045563. 1                                                               6

caused Plaintiff's damages.

### D. Ford Had Timely Notice Of The Breach Of Warranty.

Plaintiff timely notified Ford of his request to buyback the Vehicle. Under the UCC, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Colo. Rev. Stat. § 4-2-607(3)(a). "[W]here notice is given, no formal requisites must be met. It is sufficient if the notice lets 'the seller know that the transaction is still troublesome and must be watched.'" Prutch v. Ford Motor Co., 618 P.2d 657, 661 fn. 6 (Colo. 1980) (quoting Comment 4 to UCC 2-607). The purpose of giving notice is to provide the seller an opportunity to cure, prepare for litigation, and prevent bringing stale claims. Id. at 661. Therefore, Plaintiff must demonstrate only that Ford was aware of the claim and had an opportunity to cure.

Here, Plaintiff twice gave notice, and Ford twice had the opportunity to cure. Plaintiff first provided oral notice that the Vehicle did not conform to the Warranty. (Molina Dep. 68:21-69:3). After that was unsuccessful, Plaintiff provided notice in writing. (Ex. 5). Ford acknowledged receipt, and declined Plaintiff's request a second time. (Ex. 5) The Notice provided information sufficient to let Ford know that the sale of the Vehicle was still troublesome, and allow Ford an opportunity to cure the defects and prepare for litigation. As such, Plaintiff's notice was sufficient, and there is no dispute that notice was given.

### E. Ford's Limitation Of Remedies To Repair Or Replacement Of Defective Parts Is Unenforceable.

The Warranty purports to be a limited warranty, meaning that Plaintiff's remedies are limited to repair, replacement, or adjustment. There are two reasons that this limitation on remedies cannot be enforced. One, Ford did not conspicuously disclose the warranty as a "limited warranty" in accordance with the Magnusson-Moss Warranty Act.

Second, the limited remedy has failed of its essential purpose. Because the limitation on Plaintiff's remedies is unenforceable, Plaintiff may elect his remedy of a refund.

### 1. The limitation of remedy was not conspicuously disclosed.

The Magnuson-Moss Warranty Act requires that every warranty pertaining to goods valued over ten dollars be plainly and clearly designated as either full or limited. 15 U.S.C. § 2303(a)(2). This designation must also be "fully and conspicuously" disclosed in simple terms and must appear as a caption or prominent title. 16 C.F.R. § 700.6(a). Whether or not a designation is conspicuous is a question of law for the court to determine. LWT, Inc. v. Childers, 19 F.3d 539, 543 (10th Cir. 1994). Though no hard-and-fast rule applies in evaluating the conspicuousness of limited warranty designations, courts have analyzed several factors. Disclosures are usually deemed conspicuous when the relevant text is: "separately set forth from other material," "framed with heavy black line," "surrounded on all four sides by one-inch blank margin," and "set out in capital letters." Architectural Aluminum Corp. v. Macarr, Inc., 333 N.Y.S.2.d 818, 823 (N.Y. 1972); LWT, Inc., 19 F.3d at 543. Although location is "but one factor to be considered," if a warranty designation or disclosure is "buried" in a manufacturer's catalog, it may not pass muster. LWT, Inc. 19 F.3d at 543.

In LWT, Inc. v. Childers, the Tenth Circuit considered whether or not the defendant-appellant's limited warranty disclosure was conspicuous as a matter of law. Id. at 541. In this case, a buyer of a hot oil heater brought action against the seller, LWT, Inc., claiming breach of warranty and raising a question as to whether the disclosure of the limited warranty in the seller's catalogue was sufficiently conspicuous to be effective. Id. at 540. The court determined that because LWT, Inc.'s limited warranty was "printed on both sides of a full-size page on a different grain of paper" than the rest of the catalogue and was "surrounded by a white and then a colored border" on a green background, then the

warranty was considered conspicuous "as a matter of law." Id. at 543.  Similarly, in Maxton v. Wynn Oil Co., the Fourth Circuit concluded that stamping "Limited Warranty" in red ink across the top half of the front page of the warranty was conspicuous enough not to run afoul of Magnuson-Moss.  Maxton v. Wynn Oil Co., 976 F.2d 726 (4th Cir. 1992).

By contrast, courts have found held that limitations of remedies are not conspicuous where they are not noticeable.  A limitation or disclaimer is not conspicuous when it is printed in similar size font to other text, buried, plain, and does nothing to attract attention to the clause.  Moscatiello v. Pitt. Contractors Eq. Co., 595 A.2d 1190, 1193-94 (Penn. Sup. 1991).  Similarly, contractual disclaimers are not conspicuous when they are "printed in the same size and style of type and included among the myriad other provisions on the back of the retail order form."  Bert Smith Oldsmobile, Inc. v. Franklin, 400 So. 2d 1235, 1237 (Fla. Dist. Ct. App. 1981).  In sum, a disclaimer or limitation of remedy must be printed in such a manner as to call the reader's attention to the text.

In this case, the limitation of remedy was not conspicuous. Ford's limited warranty designation does not appear until the fifth page of the warranty guide.  (Ex. 2 at 9).  The relevant font is not underlined, not colored, and it does not appear in a larger size than the rest of the guide.  (Id.)  Instead, the warranty designation appears in black font overlaid on a dark gray background textbox.  (Id.)  There is nothing conspicuous about the text, the outline, or the formatting to call the reader's attention to the limitation.  (Id.)  Indeed, the only bolded text within the entire disclaimer is to state that the limitation applies to both the "New Vehicle Limited Warranty" and the "Emissions Warranty".  (Id. at 11).  Ford knew how to call attention to text by bolding the text, but chose to do so only to draw the reader's attention to the limitations applying to two separate warranty coverages.  Ford chose not to call attention to the statement that the Warranty's remedies are limited.  This material therefore cannot be considered "predominantly displayed" or "sufficiently set off from

other material." Architectural Aluminum Corp., 333 N.Y.S.2d at 823. Rather, the limitation blends into its surroundings in a manner suggesting an intent to camouflage the limitation but attempt to comply facially with the rules. This was not conspicuous, and as such, Ford has not appropriately limited Plaintiff's remedies.

### 2. The limited remedies have failed of their essential purpose.

The Warranty's limitation of remedy to repair, replacement, or adjustment has failed of its essential purpose. "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided [under Article 2 of the UCC]." Colo. Rev. Stat. § 4-2-719(2). A "determination of the applicability of the failure of essential purpose doctrine requires a two-tiered evaluation: first, identification of the essential purpose of the limited remedy, and second, whether the remedy in fact failed to accomplish such purpose." Cooley v. Big Horn Harvestore Sys., Inc., 813 P.2d 736, 744 (Colo. 1991)

The essential purpose of the limited remedy is stated in the Warranty. "Ford provides the New Vehicle Limited Warranty only to remedy manufacturing defects that result in vehicle part malfunction or failure during the warranty period." (Ex. 2 at 13). For a remedy limited to repair or replacement, "the essential purpose is to supply assurance to the buyer 'that within a reasonable period of time defective goods will be put into the condition they were warranted to be in at the time they were purchased.'" Scott v. Honeywell Int'l Inc., 14-CV-00157-PAB-MJW, 2016 WL 1077264, at *4 (D. Colo. Mar. 18, 2016) (quoting Cooley, supra).

The Warranty has failed of its essential purpose for two reasons: Ford has taken an unreasonable time to effect the remedy; and Ford cannot continue replacing defective parts with more defective parts.

### a. Ford has taken an unreasonable time to effect the limited remedy.

Ford has taken an unreasonable time to repair, replace, or adjust the defective parts of the Vehicle. "A manufacturer does not have an unlimited time or an unlimited number of attempts to repair an automobile; rather, the limited warranty is breached and/or fails of its essential purpose if successful repairs are not made within a reasonable time or within a reasonable number of attempts." Dewan v. Ford Motor Co., 842 N.E.2d 756, 762 (Ill. App. Ct. 2005). Neither the Magnusson-Moss Warranty Act nor the UCC defines what is a reasonable time to repair. Under the Colorado Lemon Law, thirty business days in a year is a reasonable time to repair or replace defective parts. Colo. Rev. Stat. § 42-10-103(1), (2)(a)(II). On its face, being out of service for over one hundred days of the first nine months of use is unreasonable. A consumer should not face the prospect of purchasing a vehicle that is out of service one out of every three days for nine months after purchase. Accordingly, the limited remedy has failed of its essential purpose for failure of timely repair.

### b. Ford's repair attempts have failed.

Ford's repair attempts over the period of three months have failed and so has the essential purpose of the limited remedy. "An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." Steele v. J. I. Case Co., 419 P.2d 902, 907 (Kan. 1966) (citations omitted). Further, a seller cannot continue repairing a vehicle with defective parts to maintain its limited remedy. See Scott v. Honeywell Int'l Inc., 14-CV-00157-PAB-MJW, 2016 WL 1077264, at *4 (D. Colo. Mar. 18, 2016) ("if a buyer accepted a seller's offer to replace a defective item, and the replacement item has the same deficiencies that the buyer complained of, this supports the position that the remedy failed

of its essential purpose."). In a case similar to this one, the Fifth Circuit held that two failed repair attempts caused a limited remedy to fail of its essential purpose. Riley v. Ford Motor Co., 442 F.2d 670, 671-73 (5th Cir. 1971). In Riley, the plaintiff purchased a new vehicle and immediately experienced problems. Id. at 671. After the first repair attempt, the problems multiplied. Id. Although Ford sent a technician who "would personally supervise" the vehicle's repair, but the Plaintiff sued, and the Fifth Circuit had no issue affirming a jury verdict that implicitly held that the limited remedy had failed of its essential purpose. Id. at 672-73.

Ford's inability to repair or replace the defective parts with non-defective parts has caused the limited remedy to fail of its essential purpose. After the Vehicle was out of service for nearly two months, the Vehicle immediately experienced problems after the dealership returned it to Plaintiff. (Ex. 4). Less than a week later, the Vehicle was back at the dealership for similar repairs. (Id.) After this second repair attempt, the Vehicle was still not as warranted. (Molina Dep. 74:3-76:24). Ford's Warranty would have Plaintiff continue to bring the Vehicle back to the dealership for the remainder of the Warranty term although Ford has proven unable to repair the Vehicle. Continued attempts to fix the Vehicle would deprive Plaintiff of the benefit of his bargain—a working vehicle.

**F.     Ford's Given Reason For Denying The Buyback Request Is Wrong.**

Prior to initiating any litigation, Plaintiff provided notice to Ford that he wanted Ford to buyback the Vehicle, which had been in the shop for over ninety days. Ford twice denied this request. But Ford did not deny the request because the Warranty is a limited warranty. Ford denied the request because the Vehicle did "not appear to meet the requirements for a repurchase/replacement under the New York or Colorado state buyback criteria." (Ex. 1). Ford's denial does not elaborate on what those criteria were, or how Ford arrived at that conclusion. Instead, Ford simply stated that it understood that

"repairs may be very inconveniencing" and recommended that Plaintiff continue working with the Ford dealership that was unable to repair the Vehicle. (Id.).

Ford's reliance on the Colorado or New York buyback criteria is both surprising and misplaced. First, it is surprising because Ford's understanding of state law buyback criteria is not based on a lawyer's understanding of the law, but a lay person's understanding of a website. During the deposition of Ford, Ford's designee testified that Ford relies entirely on the Better Business Bureau's publicly available state lemon law summaries to determine whether a vehicle qualifies for a buyback. (Deposition of Richard Johnson 38:4-39:21). This is not what one would expect from a multi-billion dollar company that manufactured 2.4 million cars last year.

Second, it is surprising and misplaced because Plaintiff's Vehicle qualified for a buyback under Colorado's Lemon Law. Under Colorado's choice of law rules, the place of delivery governs the law applicable to transactions in goods. Richard O'Brien Companies v. Challenge-Cook Bros., Inc., 672 F. Supp. 466, 469 (D. Colo. 1987) ("This points, in the absence of express choice by the parties, to the place of delivery unless the considerations outlined in § 6 dictate another state has a more significant relationship with the transaction."). The Vehicle was delivered to Plaintiff in Colorado, and therefore, Colorado law applies. Under Colorado's Lemon Law, a consumer is entitled to elect repair or replacement if the vehicle has been out of service for thirty or more business days. Colo. Rev. Stat. § 42-10-103(1), (2)(a)(II). Under Ford's interpretation of when a vehicle qualifies for a buyback, Plaintiff's Vehicle qualified for a buyback after having been out of service for more than one hundred calendar days.

Nevertheless, Ford steadfastly contends that its buyback denial was justified because the Vehicle did not meet the qualifications of Colorado law. Had Ford simply reviewed Colorado law, and not a summary from a 20th century business review, Ford

would have realized that Colorado law applied and required Ford to buyback the Vehicle. It would be inequitable for Ford to deny the buyback request when, under its own standards and interpretation of law, the Vehicle qualified for a buyback. Ford did not, and forced Plaintiff to file this lawsuit.

## V.     CONCLUSION

A limited remedy is not an excuse to sell faulty vehicles without recourse. Ford sold the Vehicle to Plaintiff at considerable cost, but the Vehicle was out of service for one out of every three days for the first nine months that Plaintiff owned the Vehicle. In two years since taking deliver, Plaintiff has put less than two thousand miles on the Vehicle, and yet Ford claims that it should be permitted to attempt to repair the defective Vehicle indefinitely. After over a hundred days of attempted and unsuccessful appeals, Ford's opportunity to repair, replace, or adjust defective components has lapsed. Plaintiff is entitled to elect his remedies, and Ford is required to refund the purchase price to Plaintiff.

DATED in Denver, Colorado this 1st day of July, 2019.

/s/ Daniel J. Vedra
Daniel J. Vedra
Vedra Law LLC
1444 Blake Street
Denver, CO 80202
Phone: (303) 937-6540
Fax: (303) 937-6547
Email: dan@vedralaw.com
**Counsel for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, the foregoing was served via CM/ECF on all parties who have entered their appearances in this matter.

/s/ Daniel J. Vedra
Daniel J. Vedra
