**MEAN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-01954-MSK-KMT

**NICK MOLINA**,

    Plaintiff,

    v.

**FORD MOTOR COMPANY**,

    Defendant.

---

**DEFENDANT FORD MOTOR COMPANY'S OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Defendant Ford Motor Company ("Ford"), by and through its counsel, Baker & Hostetler, LLP, hereby respectfully files this Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. 30] and states as follows.

## I.    INTRODUCTION

This suit arises from Plaintiff's March 2017 purchase of a Ford F-150 Truck (the "Vehicle") that was covered by a Ford New Vehicle Limited Warranty ("Limited Warranty"). Plaintiff alleges that after he took possession of the Vehicle it began exhibiting mechanical problems, which caused him to deliver the Vehicle to a Ford authorized dealer for repairs. Plaintiff alleges that, despite multiple repairs, all of which were covered by the Limited Warranty and made at no cost to Plaintiff, the Vehicle has continued to exhibit mechanical issues and Ford has "been unable or unwilling to conform the Vehicle to the warranty" as required. Compl. ¶ 1.

In his Motion for Partial Summary Judgment ("Motion"), Plaintiff now moves for summary judgment on his express breach of warranty claim. But, numerous disputes of material fact prevent entry of summary judgment on this claim, namely evidence in repair records and Plaintiff's own testimony establishing questions of fact as to whether and to what extent Plaintiff's Vehicle was actually repaired. It necessarily follows that whether Ford breached the terms of the Limited Warranty, let alone whether any such breach caused Plaintiff damages, is disputed and entry of summary of judgment on this claim is inappropriate.

Plaintiff also argues that if he succeeds in his Motion he is entitled to elect the remedy of Ford repurchasing the Vehicle because (1) "Ford did not conspicuously disclose the warranty as a 'limited warranty' in accordance with the Magnusson-Moss Warranty Act" ("MMWA"), and (2) the limited remedies provide in the Limited Warranty have "failed of [their] essential purpose." Mot. at 9-10. Neither of these arguments is meritorious. First, a plain review of the Limited Warranty reveals it is sufficiently conspicuous to meet the requirements of § 2303 of the MMWA, 16 C.F.R. § 700.6, and case law interpreting these standards. Second, genuine disputes of material fact as to whether, to what extent, and the time frame in which each of the alleged defects were repaired, replaced, or adjusted under the Limited Warranty preclude entry of summary judgment on the issue of whether Ford's Limited Warranty failed of its essential purpose. In any case, even if Plaintiff were able to make a showing that the Limited Warranty failed of its essential purpose, which he cannot, a buyback is not the remedy that would be available to him under the applicable provisions of Colorado's Uniform Commercial Code ("UCC").

For all of these reasons, Plaintiff's Motion should be denied in its entirety.

## II.  LEGAL STANDARD

Summary judgment may only be entered where "there is no genuine issue of material fact outstanding." *ANR Prod. Co. v. Westburne Drilling, Inc.*, 581 F. Supp. 542, 545 (D. Colo. 1984). "Because it is a drastic remedy, the movant must establish entitlement to summary judgment beyond a reasonable doubt." *Id.* (citing *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir. 1980)). "In addition, all pleadings, affidavits, and depositions must be construed liberally in favor of the party against whom the motion is made." *Id.* (citing *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir. 1975)). "Thus, where different inferences can be drawn from conflicting affidavits or documents, the law is clear the summary judgment should not be granted." *Id.*

## III.  PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON CLAIM 3: BREACH OF EXPRESS WARRANTY

### A.  *Burden of Proof and Elements*

Ford agrees with Plaintiff's recitation of the burden of proof and elements on this claim. Mot. at 3 § III. To succeed on his breach of warranty claim, Plaintiff must prove the following elements by a preponderance of the evidence: 1) a warranty existed; 2) Ford breached his warranty; 3) the breach proximately caused the losses claimed as damages, and 4) timely notice of the breach was given to defendant. *Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997) (citing *Palmer v. A.H.Robins Co., Inc.*, 684 P.2d 187 (Colo. 1984)).

### B. Elements Challenged by Ford[1]

**Element 2: Ford can demonstrate a triable issue of fact as to whether it complied with the Limited Warranty.** [2]

1. A number of disputed material facts prevent entry of summary of judgment with respect to the second element of Plaintiff's breach of express warranty claim.

In his Complaint, Plaintiff alleges that the Vehicle was defective because "blind spot and cross traffic fault messages would appear on the information panel intermittently; the electric running boards would stop working; the lights in the center console would flicker on and off; and Plaintiff would have no control of the radio, heater functions, or to the front two windows." Compl. ¶ 18. At his deposition, Plaintiff provided the following testimony with respect to these alleged mechanical issues as he contends they occurred prior to the repairs being completed:

- **Running Boards**: Plaintiff stated that the electric running boards, which provide a step for the driver to enter the Vehicle, would not deploy in any circumstance. Ex. A, Deposition Transcript of Nick Molina ("Molina Tr.") at 38:15-39:9. Notably, Plaintiff did not experience or report any issues related to the running boards until after the first repair was completed. *Id.* at 63:8-19.

- **Lights**: Plaintiff stated that the lights in the center console of the Vehicle would flicker on and off intermittently. *Id.* at 39:17-40:8.

- **Radio**: Plaintiff stated that he was intermittently unable to change the channel or volume on the radio. *Id.* at 40:23-41:21.

- **Heater**: Plaintiff stated that he was intermittently unable to control the heater. *Id.* at 42:1-15.

- **Windows**: Plaintiff indicated that he was intermittently unable to roll the windows up or down. *Id.* at 43:6-24.

---

[1] Ford hereby incorporates the statement of undisputed facts in its Motion for Partial Summary Judgment filed on June 27, 2019 at 3-5 [ECF No. 28].

[2] While Ford does not challenge Plaintiff's contention that the Limited Warranty constitutes an express warranty, it does dispute Plaintiff's characterizations of its contents in so far as such characterizations are inconsistent with the plain terms of the Limited Warranty. *See* Motion at 4, Ex. 2.

- **Blind Spot and Cross-Traffic Fault Message**: Plaintiff testified that he began to experience mechanical issues with the blind spot and cross-traffic messaging in the Vehicle about 45 days after he took possession. *Id.* at 34:20-35:15. Plaintiff stated that thereafter he observed that the cluster control of the Vehicle would display blind spot and cross-traffic fault messages intermittently. *Id.* at 37:16-38:8.

Ford does not dispute that the Vehicle was delivered to Phil Long on January 8, 2018 for repairs based on the Plaintiff's reports that the Vehicle's "blind spot and cross-traffic fault message that [would come] on the information panel intermittently" and "at the same time the running boards [would] stop working," the "lights in the center console w[ould] flicker on and off, Plaintiff would have "no control [of] the radio or heater functions, and "no control [of] the front 2 windows." Motion at 5, Ex. 3 at FORD0112. Nor does Ford dispute that repairs were made to the Vehicle by Phil Long, which observed some of the reported concerns, and which made the Vehicle available to Plaintiff for pick-up on March 2, 2018. Motion at 5-6. It is also undisputed that this first repair was covered under warranty at no cost to Plaintiff. *See id.*, Ex. 3. Similarly, Ford does not dispute that the Vehicle was returned to Phil Long on March 7, 2018, that Phil Long performed repairs to the Vehicle at that time, or that that Vehicle was ready for pickup on April 30, 2018. Mot. at 6, Ex. 4.

However, whether and to what extent the repairs were successful in addressing the issues complained of is disputed. After completing the first repair, Phil Long noted that it had found and repaired "all the issues" and conducted a road test during which there were "no issues present." *Id.*, Ex. 3. at FORD0114. When Plaintiff returned the Vehicle to Phil Long for the second repairs, the technician noted that he had observed that the running boards had stopped working and that a window would not roll down, but upon completion of the repairs, the technician noted "no fail messages and running boards and window working normal at this

time." *Id.*, Ex. 4 at FORD0711-12.

At deposition, Plaintiff provided the following testimony with respect to the alleged mechanical issues[3] after the repairs were completed:

- **Running Boards**: The electric running boards, which were previously entirely non-functional, were "functional" and did work after the second repair. Ex. A (Molina Tr.) at 75:8-17: *see also id.* at 38:15-39:9. This is consistent with the Phil Long technician's report that the running boards were working after the second repairs. Mot., Ex. 4 at FORD0711-12.

- **Lights**: The lights in the center console of the Vehicle, which would previously flicker on and off intermittently, were flickering "a lot less" often and to a lesser extent; Plaintiff described the lights as "functional" after the second repair. Ex. A (Molina Tr.) at 39:17-40:8, 75:18-76:12.

- **Radio**: While prior to the repairs Plaintiff contended that he was intermittently unable to change the channel or volume on the radio, *id.* at 40:23-41:25, after the second repairs Plaintiff never tested the radio, *id.* at 76:25-77:12. Indeed, at the time of deposition, Plaintiff was without knowledge of whether the radio was in fact repaired. *Id.* at 76:25-77:12.

- **Heater**: While, prior to the repairs, Plaintiff contends he was intermittently unable to control the heater, *id.* at 42:1-15, after the second repairs, Plaintiff never tested the heater, *id.* at 77:13-20. Indeed, at the time of deposition, Plaintiff was without knowledge of whether the heater was in fact repaired. *Id.*

- **Windows**: While prior to the repairs Plaintiff indicated that he was intermittently unable to roll the windows up or down, *id.* at 43:6-24, after the second repairs, Plaintiff never tested the windows, *id.* at 77:21-78:9. Indeed, at the time of deposition, Plaintiff was without knowledge of whether the widows were in fact repaired. *Id.* at 77:21-78:9. As set out above, the Phil Long technician noted the windows were working properly after the second repairs. Mot., Ex. 4 at FORD0711-12.

- **Blind Spot and Cross-Traffic Fault Message**: While Plaintiff has indicated that the cluster control of the Vehicle has continued to display a blind spot and cross-traffic fault messages intermittently after the second repair, the Phil Long technician indicated that no

---

[3] Though not specifically identified in Plaintiff's Complaint or his Motion, the record reflects that during the second repair a technician at Phil Long noted in the repair records that the Vehicle's battery was not properly holding a charge. Ex. B, Deposition of Ken Visser ("Visser Tr.") at 59:5-60:22; Motion, Ex. 4 at FORD0711-12. After discovering this issue, the Phil Long technician performed tests on the battery and ultimately replaced with a new battery. *Id.* Plaintiff did not experience any issues with the replaced battery losing charge after the second repair. Ex. A (Molina Tr.) at 44:16-45:18.

such messages were appearing after the second repairs, and, as of the time of his deposition, Plaintiff did not know if the Vehicle currently displays such messages. *See* Ex. A (Molina Tr.) at 37:16-38:8; 74:16-75:7; Mot., Ex. 4 at FORD0711-12.

Viewing these facts in the light most favorable to Ford, there is ample evidence to create a genuine dispute of material fact as to whether and to what extent Plaintiff's Vehicle was repaired. It necessarily follows that whether, how, and to what extent Ford complied with the terms of the Limited Warranty is disputed. *See, e.g., Scott v. Honeywell Int'l Inc.*, No. 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015) ("When there is an express warranty, the question whether that warranty was breached is ordinarily one for the trier of fact.") (citing *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 837 (Colo. App. 1990)).[4]

**Element 3: Genuine disputes of material fact preclude summary judgment on the causation element of Plaintiff's express breach of warranty claim.**

As set out with respect to Element 2 above, because Ford can demonstrate a triable issue of fact as to whether it complied with the Limited Warranty, issues of fact exist to whether any such alleged failure caused Plaintiff damages.[5]

---

[4] The authority that Plaintiff cites in his Motion does nothing to change this result. Plaintiff cites to *Hersh Companies Inc. v. Highline Vill. Assocs.*, 30 P.3d 221, 222-23 (Colo. 2001) for the proposition that a warranty to repair or replace "is breached if the warrantor fails to repair or replace under the warranty." Mot. at 5. Similarly, Plaintiff points to a Wyoming case, *Kure v. Chevrolet Motor Div.*, 581 P.2d 603, 608 (Wyo. 1978), to support the proposition that "[t]he repair must actually fix the problem" and an owner is not obligated to allow the warrantor to perform repairs "indefinitely." *Id.* But here, there are numerous genuine disputes of material fact that, when viewed in the light most favorable to Ford, demonstrate triable issues necessary to determining whether Ford has performed its duty to repair, replace, or adjust parts under the Limited Warranty. Nothing in the authority cited calls for the entry of summary judgment in such circumstances.

[5] While Ford does not contest Element 4 of Plaintiff's Breach of Express Warranty claim (notice), *see* Mot. at 7 § 3(D), Ford does not in any way concede that its denial of Plaintiff's buy back request is relevant to the issues raised in Plaintiff's Motion. The Limited Warranty did not warrant to Plaintiff that Ford would repurchase his Vehicle. Whatever rights to repurchase Plaintiff may have, such rights do not arise from the Limited Warranty and Plaintiff has not pled a lemon law claim here. Thus, the circumstances underlying Ford's decision as to whether or not to grant Plaintiff's buy-back requests are irrelevant to the issues before the Court on this Motion.

### IV. THE LIMITED WARRANTY'S REMEDIES ARE ENFORCEABLE

Plaintiff takes the position that, even if he were able to prove all the elements of his express breach of warranty claim, the "precise amount of [his] damages is an issue for trial." Mot. at 6. Nonetheless, Plaintiff seeks summary judgment with respect to the remedies available to him, arguing that the Limited Warranty's purported limitation of remedies to "repair, replacement, or adjustment," cannot be enforced as written because (1) "Ford did not conspicuously disclose the warranty as a 'limited warranty' in accordance with the Magnusson-Moss Warranty Act" ("MMWA"), and (2) the limited remedies provided in the Limited Warranty have "failed of [their] essential purpose." Mot. at 9-10. Neither of these arguments are sufficient to meet summary judgment scrutiny.

#### 1. The Limited Warranty is Sufficiently Conspicuous to Meet the Requirements of the MMWA.

The MMWA contemplates two types of written warranties—"full" and "limited." 15 U.S.C. § 2303. This designation is of particular import here because, while § 2304 of the MMWA sets out specific federal minimum standards and remedies applicable to a breach of a "full" written warranty, the MMWA does not provide specific remedies for the breach of "limited" or implied warranties. 15 U.S.C. §§ 2303-2304; *Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 37 (Md. Ct. Spec. App. 2008). "Instead, actions for breach of limited or implied warranties are governed by state laws." *Laing*, 949 A.2d at 37 (citing *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1167 (5th Cir.1979); *Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir.2004) (Consumers may enforce written and implied warranties under the Act in federal court, "borrowing state law causes of action."); *Gardynski–Leschuck v. Ford Motor Co.,* 142 F.3d 955, 956 (7th Cir.1998)); Mot. at 3. Accordingly, it is the disposition of Plaintiff's Colorado

*breach of warranty claim* that determines the remedies available to him with respect to his MMWA claim. *See e.g.*, *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1324 (W.D. Wash. 2014); *Taliaferro v. Samsung Telecomms. Am., LLC*, No. 3:11-CV-1119-D, 2012 WL 169704, at *10 (N.D. Tex. Jan. 19, 2012) ("[t]he MMWA does not provide an independent basis for liability, but instead 'provides a federal cause of action *for state law express and implied warranty claims*'") (citing *In re Sony Grand Wega KDF–EA10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d 1077, 1101 (S.D. Cal. 2010); *Monticello v. Winnebago Indus., Inc.*, 369 F.Supp.2d 1350, 1356 (N.D.Ga.2005) ("[A] federal court applies state law to claims under the [MMWA] *for breach of written and implied warranties*."); Mot. at 3.

In support of his argument that the "limited" nature of the Limited Warranty is not sufficiently conspicuous, Plaintiff points to a section of the MMWA entitled "Full (statement of duration) or limited warranty," which sets out that:

> Any warrantor warranting a consumer product by means of a written warranty shall clearly and conspicuously designate such warranty in the following manner, unless exempted from doing so by the Commission pursuant to subsection (c) of this section:
> (1) If the written warranty meets the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a "full (statement of duration) warranty".
> (2) If the written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a "limited warranty".

15 U.S.C. § 2303(a)(1)-(2). Such designation as a "limited" or "full" warranty "should appear clearly and conspicuously as a caption, or prominent title, clearly separated from the text of the warranty." 16 C.F.R. § 700.6.

Here, the Limited Warranty's table of contents, located on page 3, identifies a section

entitled "**THE NEW VEHICLE LIMITED WARRANTY FOR YOUR 2017-MODEL VEHICLE**," as well as the location of sections concerning the Limited Warranty entitled "**Limitations and Disclaimers**," "**What is Covered?**," and "**What is Not Covered?**" Mot, Ex. 2 at FORD0060 (pictured below). On page 5, the Limited Warranty's terms are set out following a gray box with bold black text and a border stating: "**The New Vehicle Limited Warranty for your 2017-model vehicle**." *Id.* at FORD0066 (pictured below).



 The designation of the Limited Warranty as "limited" is far from "buried," and meets the majority of the non-exclusive factors Plaintiff contends contstitute a conspicuous designation under § 2303, namely it is "separately set forth from other material," "framed" by a gray box

4820-9020-2527.4

with disguishable borders, and it is "surrounded on all four sides by one-inch blank margin[s]." Mot at 8 (citing only authority from jurisdictions outside of Colorado). Most importantly, the "limited" designation "appear[s] clearly and conspicuously as a [] prominent title [and is] clearly separated from the text of the warranty" as required by the MMWA. *See* 16 C.F.R. § 700.6. These facts evidence that Ford's designation of the Limited Warranty as "limited" is sufficiently conspicuous to meet the requirements of § 2303 of the MMWA and 16 C.F.R. § 700.6.

Plaintiff next points to cases in only jurisdictions outside of Colorado to argue that the Limited Warranty's "limitiation of remedy" language is "not sufficiently conspicuous."[6] Mot. at 9. Confusingly, Plaintiff's argument appears to conflate the requirements that apply to the designation of an entire warranty as "limited" or "full" under the MMWA and the standards that would apply to determine whether the limiting language within the terms of the Limited Warranty is sufficient to limit remedies available under the terms of the Limited Warranty under state law. [7] *See* Mot. at 8-9; 15 U.S.C. § 2303(a)(1)-(2); 16 C.F.R. § 700.6. In any case, the limitations set out within the substantive terms of the Limited Warranty are legally sufficient to meet the requirements of Colorado law, which is the law applicable to Plaintiff's breach of express warranty claim. *See e.g.*, *Walsh*, 63 F. Supp. 3d at 1324; *Taliaferro*, No. 2012 WL 169704, at *10.

---

[6] *See* Mot. at 9 (citing *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 407 Pa. Super. 363, 369–70, 595 A.2d 1190, 1193–94 (1991) (applying Pennsylvania law, not addressing any warranty issues under the MMWA, and turning on facts that are counter-analogous here); *Bert Smith Oldsmobile, Inc. v. Franklin*, 400 So. 2d 1235, 1236 (Fla. Dist. Ct. App. 1981) (applying Florida law, not addressing any warranty issues under the MMWA, and addressing only issues relevant to implied warranties not express warranties)).

[7] Plaintiff cites to *LWT, Inc. v. Childers*, 19 F.3d 539, 542 (10th Cir. 1994), in order to identify factors relevant to determining whether the Limited Warranty here is conspicuous (though it is unclear whether he is making such argument with respect to the designation of the warranty as "limited" under the MMWA or the limitations contained within its substantive terms). Mot. at 8-9. Either way, Childers is not on point as it turned on New Mexico law, did not address the requirements for a warranty to be designated as "limited" or "full under the MMWA, and addressed representations made in a manufacturer's catalogue provided to the plaintiff buyer as opposed to a warranty guide pertaining to a specific product already purchased, as is the case here. *See generally Childers*, 19 F.3d 539.

Under Colorado law, where an express warranty is made, it can be limited by "words or conduct tending to negate or limit" the warranty so long as such "negation or limitation" is "reasonable" and "consistent" with the operative affirmative express warranty. C.R.S. § 4-2-316(2). "Remedies for breach of warranty can be limited in accordance with the provisions of this article." Colo. Rev. Stat. Ann. § 4-2-316 (4). Here, within the terms of the Limited Warranty, Ford specifically set out:

> The remedy under this written warranty, and any implied warranty, is limited to repair, replacement, or adjustment of defective parts. This exclusive remedy shall not be deemed to have failed its essential purpose so long as Ford, through its authorized dealers, is willing and able to repair, replace, or adjust defective parts in the prescribed manner.

Mot., Ex. 2 at Ford0070. Ford's Limited Warranty makes clear that it is providing only a promise to repair, replace, or adjust "defective parts" during the warranty term. *Id.* Nowhere in Ford's Limited Warranty does it affirmatively promise to provide any remedy beyond repair, replacement, or adjustment. This limiting language is entirely reasonable and consistent with the operative affirmative terms of the Limited Warranty. Thus, Ford has lawfully limited the remedies available under the warranty to only repair, replacement or adjustment of defective parts.

### 2. The Limited Warranty has Not Failed of its Essential Purpose.

Plaintiff next argues that the Limited Warranty's limitation of available remedies has resulted in the failure of its essential purpose because "Ford has taken an unreasonable time to effect the remedy; and Ford cannot continue replacing defective parts with more defective parts." Mot. at 10. Plaintiff's arguments are misplaced.

Under C.R.S. § 4-2-719(1)(a), a written warranty "may limit or alter the measure of

damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." "Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect." C.R.S. § 4-2-719 cmt. 1. The same statute also sets out that "where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had *as provided in this title*." 4-2-719(2) (italics not in original).

Here, it is undisputed that Ford "provides the [Limited Warranty] only to remedy manufacturing defects that result in vehicle part malfunction or failure during the warranty period." Mot., Ex. 2 at Ford0070; Mot. at 10. The parties also agree that Ford never refused to cover requested repairs to the Vehicle under the Limited Warranty. *See* Mot. at 12-13. However, numerous disputes of material fact prevent a finding that Ford has either taken an "unreasonable time to effect the remedy" or that its "repair attempts have failed." Mot. at 10-11.

### a. Whether Ford's Repair Attempts were Successful or Completed in a Reasonable Time is Disputed.

As set out above with respect to the second element of Plaintiff's breach of express warranty claim—breach—viewing the facts in the light most favorable to Ford, there is ample evidence to create a genuine dispute of material fact as to whether and to what extent Plaintiff's Vehicle was repaired, replaced, or adjusted under the Limited Warranty. *Supra* § III(b)(1). It necessarily follows that whether Ford has fulfilled the essential purpose of the Limited Warranty because it failed to repair the Vehicle is in genuine dispute and should properly be decided by a

jury.[8] Likewise, the question of whether Ford ever repaired the Vehicle with a replacement part that was defective is also a question within the province of a jury. In fact, conspicuously, in Plaintiff's Motion he fails to put forward any proof establishing that any specific replacement part installed in Plaintiff's Vehicle during the repairs was defective. *See* Mot. at 10-12.

### b. Whether the Repairs were Completed in a Reasonable Time is Disputed.

Plaintiff argues that he is entitled to a finding that the Limited Warranty failed of its essential purpose as a matter of law because the repairs took an unreasonable amount of time. Mot. at 11. However, whether, to what extent, and the time frame in which each of the alleged defects were repaired, replaced, or adjusted under the Limited Warranty is in dispute.[9] These facts are material to the determination of whether the repairs were made in a reasonable amount of time. Thus, summary judgment on this issue is not appropriate. *See Roosevelt-Hennix v. Prickett*, 717 F.3d 751, 754 n.2 (10th Cir. 2013) (when a question of reasonableness "turns on unresolved factual disputes" such inquiry should be submitted to the jury for determination).

### 3. Plaintiff is not Entitled to a Buyback.

Plaintiff argues that because the remedies in the Limited Warranty failed of their essential purpose, he is "entitled to elect his remedies, and Ford is required to refund the

---

[8] Even in the authority that Plaintiff highlights in his Motion with respect to the issue of whether Ford's repair attempts have failed, "[t]he question whether the remedy provided in Ford's warranty did 'fail of its essential purpose' was presented to jury." *Riley v. Ford Motor Co.*, 442 F.2d 670, 673 (5th Cir. 1971). As in *Riley*, here, whether and to what extent Ford complied with its warranty to repair, replace, or adjust defective parts is properly a jury question.

[9] As Plaintiff points out, "[n]either the Magnusson-Moss Warranty Act nor the UCC defines what is a reasonable time to repair" before a limited repair, replacement, and adjustment warranty will fail of its essential purpose. *See* Opp. at 11. And, while Plaintiff cites to Colorado Lemon law, he points only to a section providing that "thirty business days in a year is a reasonable time to repair or replace defective parts," *id.* (citing C.R.S. § 42-10-103(1), (2)(a)(II)), Plaintiff has not pled a Lemon Law claim and has failed to identify any section of that statute providing a certain number of days that is unreasonable as a matter of law to repair in the context of a breach of express warranty claim—the only claim he seeks summary judgment on in the instant Motion.

purchase price to Plaintiff." Mot. at 14. This is not so. Even if Plaintiff were able to make a showing that the Limited Warranty failed of its essential purpose, a buyback is not the remedy that would be available to him.

C.R.S. § 4-2-719(2) sets out that "where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had *as provided in this title*." 4-2-719(2) (italics not in original). As relevant here, Colorado's UCC sets out the measure of damages and remedies available to buyers "for breach in regard to accepted goods:"

> (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
> (3) In a proper case, any incidental and consequential damages under section 4-2-715 may also be recovered.

C.R.S. § 4-2-714. It necessarily follows that C.R.S. § 4-2-714, which does not contemplate a buyback, would govern the remedies available to Plaintiff even if he were able to show that the Limited Warranty failed of its essential purpose.[10]

### a. The Reasons for Ford's Denial of Plaintiff's Buyback Request are Immaterial to the Instant Motion because Plaintiff has not Brought a Lemon Law Claim.

Plaintiff has not asserted a claim under Colorado's Lemon Law, nor does he contend that Ford's denial of his requests for a buyback form the basis of his breach of express warranty claim. *See generally* Compl.; Mot. at 3-7. Nonetheless, Plaintiff has included an entire section in his Motion discussing why he believes that Ford's reasons for denying his buyback requests were wrong. Mot. at 12. Plaintiff does not explain how this section is relevant to his Motion, which

---

[10] Ford does not waive any right to assert any applicable defense to the recovery of such damages based on the limitations and exclusions in the Limited Warranty.

seeks only partial summary judgment on his express breach of warranty claim, and Ford can discern none. As set out more fully in Ford's Motion for Partial Summary Judgment (ECF 28), Plaintiff confuses the issues here, repeatedly seeking to enforce a duty to repurchase the vehicle could only have potentially arisen from a cause of action he has not asserted. The reasons for Ford's denial of Plaintiff's buyback requests are entirely immaterial to deciding the instant Motion.

## CONCLUSION

For all of the foregoing reasons, Ford respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

Dated: August 12, 2019

Respectfully submitted,

BAKER & HOSTETLER LLP

By: /s/ Sammantha J. Tillotson
Casie D. Collignon
ccollignon@bakerlaw.com
Sammantha J. Tillotson
stillotson@bakerlaw.com
1801 California Street
Suite 4400
Denver, CO 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805

Attorneys for FORD MOTOR COMPANY

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was filed and served via ECF this 12th day of August, 2019, to the following counsel of record:

Daniel J. Vedra Esq.
Vedra Law, LLC
1435 Larimer St.
Suite 302
Denver, Colorado 80202

*Attorney for Plaintiff*

                                      /s/ *Carolyn Bahr*
                                      Carolyn Bahr